Steven M. Kaplan (sk6909)
KAPLAN & LEVENSON P.C.
*Attorneys for Diamond Life Lighting (HK), Ltd.*
630 Third Avenue
New York, NY 10017
212.983.6900
smk@kaplev.com

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

------------------------------------------------------------X
In re:

JOSE C. ESPINOSA,                                            Case No. 12-13917 (DHS)
                                                             Chapter 7

                        Debtor.
------------------------------------------------------------X
DIAMOND LIFE LIGHTING (HK), LTD.,

                        Plaintiff,           Adv. Proceeding No.

    -against-

JOSE C. ESPINOSA,

                        Defendant.
------------------------------------------------------------X

**ADVERSARY COMPLAINT FOR DENIAL OF DISCHARGE PURSUANT TO
11 U.S.C. §727 and §523, and Fed. R. Bankr. Pr. 4007**

**DIAMOND LIFE LIGHTING (HK), LTD.,** ("Plaintiff" or "Diamond Life"), by

and through its counsel, Kaplan & Levenson, P.C., having an office at 180 Sylvan

Avenue, Suite 201, Englewood Cliffs, NJ 07632, for its Complaint states:

**JURISDICTION AND VENUE**

        1.      Debtor, Jose C. Espinosa ("Defendant-Debtor"), filed a voluntary petition

for relief under Title 11, Chapter 7 of the United States Code (the "Bankruptcy Code") on

{00105635.1 / 1203-001}                       1

February 17, 2012 (the "Petition Date").

2. Nancy Isaacson was then appointed as Chapter 7 Trustee pursuant to 11 U.S.C. ¶ 701 on or about February 17, 2012.

3. This court has jurisdiction of the subject matter pursuant to 28 U.S.C. §§157 and 1334.

4. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§157(b)(2)(J).

5. Venue is proper in this core proceeding pursuant to 28 U.S.C. §1409.

6. This matter is brought pursuant to the equitable powers of the Court under 11 U.S.C. §§105(a), 523, 727(a) and Bankruptcy Rules 4004, and 7001 *et seq.*

**Background**

7. Diamond Life is a corporation formed under the laws of Hong Kong with its principal office in Hong Kong. Diamond Life is in the business of, among other things, manufacturing a wide variety of lighting products, including without limitation chandeliers and other types of lighting fixtures.

8. Defendant-Debtor is one of two principal owners of Picasso Lighting, Inc. d/b/a the Pecaso Group, d/b/a Picasso Lighting, d/b/a Pecasso Lighting, d/b/a Pecaso Lighting, Inc., d/b/a Bernard Pecaso Lighting (collectively, "Picasso"), a New Jersey corporation with its principal place of business in this District. Picasso is in the business of, among other things, designing and selling on a wholesale basis a wide variety of lighting products, including without limitation chandeliers and other types of lighting fixtures.

9. Commencing in the late 1990's Picasso began using Diamond Life as its manufacturer of lighting products.

10. On August 25, 2005, Diamond Life and Picasso entered into a written agreement (the "Agreement") dated as of September 30, 2005 whereby Diamond Life agreed to extend Picasso credit of up to three hundred thousand dollars (US$300,000) toward the purchase of goods manufactured by Diamond Life. Pursuant to the Agreement:

(a) Pecaso Lighting was to pay all outstanding balances due to Diamond Life within ninety (90) days of the shipment date for the underlying goods;

(b) The principal owners of Picasso, Defendant-Debtor and non-party Sol Shem-Tov ("Shem Tov"), would execute written personal guarantees, jointly and severally guaranteeing all obligations due from Picasso to Diamond Life; and

(c) In the event Picasso's credit balance exceeded $300,000, or if Picasso was delinquent in the making of any of its payments, Diamond Life could withhold the shipment of further goods and discontinue extensions of further credit until Picasso paid all amounts due.

On August 25, 2005, Defendant-Debtor and Shem-Tov each executed a written Deed of Joint and Several Guarantee and Indemnity agreement (the "Personal Guarantee") in favor of Diamond Life, whereby Defendant-Debtor and Shem-Tov each agreed to jointly and severally guarantee and indemnify Diamond Life, among other things, the due and punctual payment of all sums payable by Picasso.

11. By written agreement dated May 12, 2006, Diamond Life and Picasso agreed to modify the Agreement by, among other things, increasing the amount of credit to be extended to Picasso to $700,000.

**Picasso Defaults Under the Agreement**

12. Over time, the size of Picasso's orders began to grow, but Picasso was continually paying its bills beyond the 90-day period provided for in the Agreement. And when Picasso did make payments, it would often pay less than the amount that was then owed (i.e. the balance that was more than 90 days overdue).

13. On multiple occasions, Diamond Life notified Picasso that Diamond Life would be forced to exercise its rights under the Agreement to withhold further shipments until payment was received (See Exhibit A at ¶3(d)).

14. On each occasion, in an attempt to get Diamond Life to keep shipping orders and extending credit to Picasso, Defendant-Debtor represented and promised Diamond Life that Picasso would pay the outstanding balances according to specific payment schedules.

15. On multiple occasions, this resulted in Diamond Life shipping additional goods to Picasso and extending additional credit.

**Defendant-Debtor Makes a Series of False Promises 's to Diamond Life**

16. In order to induce Diamond Life to continue to extend credit and ship goods to Picasso, Defendant-Debtor made a series of false promises to make interim payments. In reliance on these false promises, Diamond Life shipped additional goods and extended Picasso and Defendant-Debtor credit, none of which was ever paid back.

17. These false promises include, without limitation, the following:

(a) A July 10, 2007 e-mail sent on Defendant-Debtor's behalf, in which a series of interim payments were promised;

(b) A July 20, 2007 e-mail sent on Defendant-Debtor's behalf, in which a series of interim payments were promised;

(c) An April 18, 2008 letter from Defendant-Debtor stating that Picasso was imminently going to receive cash to pay Diamond Life and thus wanted Diamond Life to prioritize shipments of goods Picasso;

(d) A June 20, 2008 letter in which Debtor-Defendant requested additional shipments of goods, together with additional payment promises;

(e) A July 23, 2009 letter in which Debtor-Defendant represented that Picasso was about to receive an additional cash infusion and would pay Diamond Life if Diamond Life would ship additional product; and

(f) Multiple other telephonic and in-person representations.

18. All of the above-referenced representations were materially false when made, and were made with the specific intention that Diamond Life rely thereon by shipping goods and continuing to extend credit.

19. Diamond Life relied Defendant-Debtor's false promises of payment to its detriment and is now owed in excess of $1,288,120.

20. By order and judgment dated February 6, 2012, Diamond Life was awarded a judgment in the District of New Jersey for $1,288,120 against Defendant-Debtor and others.

## FIRST COUNT

21. Plaintiff reasserts each and every allegation set forth in all preceding paragraphs of this Complaint as though fully set forth herein.

22. On or about January 13, 2011, Defendant-Debtor sold and assigned one of his assets, his fractional interest in a certain mortgage made by Erick J Salgado and Sonia M. Salgado, mortgagors, to his wife's uncle, Milton Fonseca for $80,000.00("Mortgage Assignment Proceeds"). Upon the assignment of the his interest in the Salgado mortgage, the Mortgage Assignment Proceeds became the property of Defendant-Debtor.

23. In or about April, 2011, less than one year before the Petition Date, Defendant-Debtor transferred to his wife, Kenia Esposito, approximately $50,000 of the Mortgage Assignment Proceeds (the "Transfer"). The purpose of the Transfer was to provide Kenia Esposito with start-up capital for a business entity, PTY Lighting LLC, a New Jersey Limited Liability Company, which was formed by Defendant-Debtor, but placed in name on or about April 20, 2011.

24. Defendant-Debtor received no consideration for the Transfer.

25. Upon information and belief, Defendant-Debtor made the Transfer to Kenia Esposito with the intent to hinder, delay or defraud his creditors, and/or received less than reasonably equivalent value in exchange for the Transfer and was insolvent at the time that the Transfer was made, or upon making the Transfer.

26. Due to the Transfer, which took place within one-year before the Petition

Date and was made with intent to hinder, delay or defraud his creditors, Defendant-Debtor is not entitled to receive a discharge in his Chapter 7 Bankruptcy proceeding, pursuant to 11 U.S.C. § 727(a)(2)(A).

**WHEREFORE**, the Plaintiff demands judgment against Defendant-Debtor as follows:

(a) Denying Defendant-Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A); and

(b) Granting such other and further relief as the court deems just and equitable

## SECOND COUNT

27. Plaintiff reasserts each and every allegation set forth in all preceding paragraphs of this Complaint as though fully set forth herein.

28. By electronically executing his Chapter 7 bankruptcy petition, Defendant-Debtor made an oath, under penalty of perjury, that the information contained in the Petition was true and correct.

29. On Schedule B of Defendant-Debtor's bankruptcy petition, Defendant-Debtor disclosed that, among his items of personal property, is a watch to which Defendant Debtor ascribed a value of $500.

30. On May 24, 2012, Defendant-Debtor appeared for an examination pursuant to a Subpoena served upon him pursuant to United States Bankruptcy Rule 2004 ("Rule 2004 Examination"). In connection with The Rule 2004 Examination, Defendant-Debtor took an oath to tell the truth in response to the questions put to him during the Rule 2004 Examination.

31. At the Rule 2004 Examination, Defendant-Debtor was questioned about

his Schedule B disclosure of the watch with a claimed value of $500. Defendant-Debtor claimed that the watch referred to on his Schedule B is a "Swatch" watch, but acknowledged that he is in possession of a *Cartier* watch, which he falsely claimed belongs to Shem-Tov, that is of greater value.

32. Subsequent to the Rule 2004 Examination, the Chapter 7 trustee requested that Defendant-Debtor either produce documentation sufficient to establish that the *Cartier* watch does not belong to him, or to produce the *Cartier* watch to the trustee.

33. In response to Chapter 7 trustee's request, on June 1, 2012, Defendant-Debtor delivered the *Cartier* watch to the trustee, and the trustee presently holds the watch.

34. On information and belief, the *Cartier* watch has a value of $4500.

35. With respect to his *Cartier* watch, Defendant-Debtor has knowingly and fraudulently made false oaths, both in connection with his Chapter 7 bankruptcy Petition and in connection with his testimony given at the Rule 2004 Examination. In addition, with respect to the *Cartier* watch, Defendant-Debtor has attempted, with intent to hinder, delay or defraud his creditors, to conceal the *Cartier* watch.

36. In connection with his Chapter 7 bankruptcy petition, Defendant-Debtor failed to disclose material information regarding his income from a rental property that he co-owns with his wife, Kenia Espinosa.

37. In addition, in connection with his Chapter 7 bankruptcy Petition, Defendant-Debtor failed to disclose his interest in a pleasure boat that he co-owns with Shem-Tov.

38. Defendant-Debtor's failure to disclose this rental income and the pleasure

boat constitute additional knowing and fraudulent false oaths by Defendant-Debtor. In addition, with respect to the rental income and the pleasure boat, Defendant-Debtor has attempted, with intent to hinder, delay or defraud his creditors, to conceal the income and the pleasure boat.

39. Due to his knowing and fraudulent false oaths taken both in his Chapter 7 bankruptcy petition and at the Rule 2004 Examination, and due to his attempts to conceal his income and his assets from his creditors and from the trustee with intent to hinder, delay or defraud his creditors, Defendant-Debtor is not entitled to receive a discharge in his Chapter 7 Bankruptcy proceeding, pursuant to 11 U.S.C. § 727(a)(4)(A) and 727(a)(2)(A).

**WHEREFORE**, the Plaintiff demands judgment against Defendant-Debtor as follows:

(a) Denying Defendant-Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and § 727(a)(2)(A); and

(b) Granting such other and further relief as the court deems just and equitable.

### THIRD COUNT

40. Plaintiff reasserts each and every allegation set forth in all preceding paragraphs of this Complaint as though fully set forth herein.

41. For the reasons set forth above, the Defendant-Debtor incurred its debt to Diamond Life and obtained the goods and credit extended from Diamond Life under false pretenses and by virtue of fraudulent representations.

**WHEREFORE**, the Plaintiff demands judgment against Defendant-

Debtor judgment as follows:

 (a) Determining that all debts owed by the Defendant-Debtor to the Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

 (b) granting Plaintiff its attorneys' fees and costs in bringing this action; and

 (c) Granting such other and further relief as the court deems just and equitable.

## FOURTH COUNT

42. Plaintiff reasserts each and every allegation set forth in all preceding paragraphs of this Complaint as though fully set forth herein.

42. For the reasons set forth above, Defendant-Debtor inflicted willful and malicious injury to Diamond Life.

**WHEREFORE**, the Plaintiff demands judgment against Defendant-Debtor judgment as follows:

 (a) Determining that all debts owed by the Defendant-Debtor to the Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

 (b) granting Plaintiff its attorneys' fees and costs in bringing this action; and

 (c) Granting such other and further relief as the court deems just and equitable.

## FIFTH COUNT

43. Plaintiff reasserts each and every allegation set forth in all preceding paragraphs of this Complaint as though fully set forth herein.

44. Plaintiff incurred and will continue to incur significant legal fees and related expenses in order to pursue its claims against Defendant-Debtor.

45. Plaintiff is entitle to recover such legal fees and expense pursuant to Federal Rule of Bankruptcy Procedure 7008(b).

Dated:  August 30, 2012

                    KAPLAN & LEVENSON P.C.
*Attorneys for Plaintiff*
630 Third Avenue
New York, NY 10017
212.983.6900


By:/s/ Steven M. Kaplan (sk6909)